## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

DANIEL LEE FRANKLIN,

    PLAINTIFF,

VS.                                              CASE NO.: CV-12-J-1945-S

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    DEFENDANT.

### MEMORANDUM OPINION

This matter is before the court on the record and briefs of the parties. The court has jurisdiction pursuant to 42 U.S.C. § 405. The plaintiff is seeking reversal or remand of a final decision of the Commissioner. All administrative remedies have been exhausted.

### Procedural Background

The plaintiff applied for Disability Insurance Benefits and Supplemental Security Income, alleging an inability to work beginning October 13, 2007, due to a gunshot wound to the left side of his face, resulting in severe jaw and face pain, migraines, and medication which causes him to be drowsy (R. 106, 107, 155). Although not specifically listed as a disabling condition, his medical records are

replete with references to trigeminal neuralgia[1] as a result of the gunshot wound (R. 226, 259). His treating physician noted that the pain is unpredictable, incapacitating, and affected by changes in barometric pressure, rendering "gainful employment impossible" (R. 259). He also suffers from pain in his chest, arms (R. 85) and down his back into his hips, making walking difficult (R. 87). The pain is made worse by heat and cold (R. 90). The medication he takes for migraines "knock[s]" him "out" (R. 85).

The administrative law judge (ALJ) reached a determination that the plaintiff was not disabled at any time from October 13, 2007, through the date of his decision, November 13, 2010 (R. 25). The plaintiff appealed this decision to the Appeals Council which denied his request for review on March 22, 2012 (R. 1-3). The ALJ's decision thus became the final order of the Commissioner. *See* 42 U.S.C.§ 405(g). This action for judicial review of the agency action followed (doc. 1). The court has considered the entire record and whether the decision of the ALJ is supported by substantial evidence. For the reasons set forth herein, this case is **REVERSED** and **REMANDED** to the Commissioner for further action consistent with this opinion**.**

---

[1]Trigeminal neuralgia is a nerve disorder that causes a stabbing or electric-shock-like pain in parts of the face. Symptoms include very painful, sharp electric-like spasms that usually last a few seconds or minutes, but can become constant; pain usually only on one side of the face, often around the eye, cheek, and lower part of the face; pain may be triggered by touch or sounds, brushing teeth, chewing, drinking, eating or lightly touching the face. *See* http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0001751/

**Factual Background**

The plaintiff was born on May 31, 1974 (R. 81). He completed high school in learning disabled classes, earning a certificate instead of a diploma (R. 81-82). His past work is all as an electrician on construction sites, which was skilled, heavy work (R. 101).

The plaintiff testified he has pain under his shoulder blades into his shoulders and neck every day (R. 84). If he tries to wash dishes or bend over, he feels like "somebody's got the underneath of his chin and it just feels like somebody's just ripping the skin. That's – I can't even shave from here over ... If I bump it or anything it goes into real bad pain" (R. 85). He thinks the pain in his chest and arms is from bullet fragments from the gun shot (R. 85-86). He also has pain down the middle of his back into his hips, legs, and down to the heel of his left foot, making walking difficult (R. 87). The plaintiff's chin was reconstructed from steel plates, and he lost many teeth (R. 88-89). Heat and cold cause his neck and muscles to "draw up, tense up," causing "real bad stabbing pains" and "aches and throbs" (R. 90). He is unable to do anything outside if the temperature is less than 50 degrees (R. 147). Brushing his teeth "feels like thousands of little needles in there" (R. 91). He does not cut grass and does little driving (R. 91-92). He has pain in his chin, jaw and neck everyday, and migraines between one and three times a week (R. 92). He has a list

of medications, including morphine pain patches[2] (R. 93, 96). Since his accident, he suffers from depression and gets "real ill-tempered" (R. 93).

As of the date of his hearing, the plaintiff had been referred to a pain management clinic, but had not yet been (R. 94). When asked why he could not work, the plaintiff answered;

> The pain. Mainly just the pain. Doing physical labor, I mean, just – like, I don't know, washing dishes and stuff like that, trying to sweep and mop and – I mean. It just goes into real bad pain, kind of pain I have to take more and more medication just to try to get it down. And if I don't – the pain medication don't take it away I end up having to put a morphine patch on –

(R. 94). The plaintiff also said he has trouble sitting for a long time because his lower hips and legs begin hurting, so he will get up and wander through his house (R. 95). He will sit for a few minutes, then get back up, or go lie down (R. 95). He testified that out of a week, he has to lie down three to four days, for two to three hours at a time (R. 95). His pain medication mostly "just knocks the edge off" his pain (R. 96). The plaintiff testified his pain ranges between a six and seven on a scale of one to ten daily, going up to a nine or ten two or three days a week (R. 97).

---

[2] As of May 2010 the plaintiff was prescribed diclofenac sodium (generic for Voltaren) as an anti-inflammatory, hydrocodone for pain (narcotic analgesic), carisoprodol (generic for Soma) as a muscle relaxer, promethazine (generic for Phenergan) for sleep, Xanax as an anti-depressant, fentanyl patches for pain (narcotic analgesic used to treat moderate to severe breakthough pain) and amitriptyline (generic for Elavil) for sleep (R. 184).

The Vocational Expert (VE) was asked to assume a younger individual with a twelfth grade education, who could lift fifteen pounds occasionally, five to ten pounds frequently, who should avoid concentrated exposure to heat, cold, humidity and vibration, with no hazardous machinery, with occasional reaching and pulling, limited to low semiskilled and unskilled work, with no production paced work (R. 102). Such an individual could not perform any of the plaintiff's previous work, but other jobs such as surveillance system monitor and some cashier jobs exist in significant numbers in the regional and national economy (R. 102). Additionally, there would be less than light level security guard jobs (R. 103). If such a person had moderately severe pain, he would be unable to work (R. 103-104).

The relevant medical records begin October 13, 2007, when the plaintiff suffered a gunshot wound to his face (R. 195-210). He underwent a tracheostemy and oromaxillofacial surgery to repair his mandible (R. 195). A CT scan reflects that many of his teeth were shattered and small pellets were seen throughout his mouth and nasal cavity (R. 202). He was followed by Dr. Joseph Deatherage, an Oral Maxillofacial surgeon, who performed several follow-up surgeries. In November 2007 Dr. Deatherage removed some of the hardware which had been inserted in the plaintiff's mouth, as well as a tooth with an exposed root and a "couple of areas of exposed necrotic bone" (R. 216). Further non-salvagable teeth were removed in a December surgery (R. 214). In a February 2008 visit, Dr. Deatherage noted the

5

plaintiff's report of "continued excessive pain and depression" which was not relieved by gabapentin[3] (R. 212). His records reflect that the plaintiff was prescribed Lortab and "counseled about the negative impact of long-term opioid use; however he is in such severe pain at ... this time I feel it is warranted" (R. 212). The following month, the plaintiff still had "severe lancinating pain of the bilateral V3 distribution"[4] (R. 211).

Dr. Dale Trammell is plaintiff's regular, treating physician. His records reflect that the plaintiff suffers from trigeminal neuralgia, for which a variety of pain medications have been tried (R. 226, 227). Records predating the plaintiff's gunshot accident reflect the plaintiff had ongoing complaints of bursitis, tennis elbow and headaches (R. 228, 231). Because of headaches and sinus pain, the plaintiff had a CT scan, which was normal, and sinus imaging, which revealed a septal deviation and bone spur (R. 238-239).

In March 2009 Dr. Trammell completed a Physical Capacities Evaluation in which he opined that the plaintiff could lift 10 pounds occasionally and less than that frequently (R. 254). He believed the plaintiff could sit no more than 4 hours total in an 8 hour work day, and could stand and walk no more than a combined total of 2

---

[3] Gabapentin is a antiseizure medication which is also used to relieve neuralgic pain. http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000940.

[4] "V3" refers to the mandibular nerve branch of the trigeminal nerve.

hours during that period (R. 254). Dr. Trammell limited the plaintiff to no more than occasionally on all pushing, climbing, manipulation and bending movements, and also noted no work around hazardous machinery due to medication effects and no work around dust or fumes (R. 254). As to plaintiff's pain, Dr. Trammel stated it was present to such an extent that it would be distracting to performance of daily work, physical activity would greatly increase this pain and cause distraction from or total abandonment of tasks, and side effects from medication were severe and would limit effectiveness due to drowsiness (R. 255-256). Additionally, fatigue and weakness were present to an extent that would negatively impact work, and physical activity would magnify the fatigue and weakness to an extent that would cause abandonment of tasks (R. 257). Dr. Trammell also wrote that

> Mr. Daniel Franklin suffers from severe episodic, waxing & waning neuropathic pain from chronic (L) trigeminal neuralgia (350.9) that is a permanent injury from a gunshot wound to the jaw from a hunting rifle. The pain is very unpredictable in nature, becoming incapacitating during barometric pressure changes & precipitation, requiring very strong prescription medications which would constrict him to the home for uncertain period at uncertain times. Lyrica is used for reduction of neuropathic pain [and] has a common side effect of difficulty in concentration. Th[at] combined with unpredictable bouts of severe pain have made gainful employment impossible. I do not see this condition improving any time in the near future.

(R. 259).

In October 2008 the plaintiff's medical records reflect he suffered from headaches, mononeuritis, insomnia, tendonitis, abdominal pain, and goiters (R. 249, 252). While joint pain was not noted, numbness and neuropathy were, with a notation that the plaintiff suffered from chronic neuropathic pain in left trigeminal region, worse after manual labor such as pressure washing (R. 249). Depression and insomnia were also noted (R. 249). Medical records for the next twelve months have similar notations throughout them, with a variety of medications being tried to help control the plaintiff's pain including back pain and leg pain (R. 266-280).

A record dated October 13, 2009, noted that the plaintiff was in a car wreck, from which his back, neck and left shoulder hurt (R. 263). His medication was switched from Lyrica to carbamazepine[5] for neuropathic pain in his legs and jaw (R. 263). He was prescribed Lidocaine for mandibular trigeminal neuralgia and bacofen for tension and fibromyalgia pain, which would help with insomnia, amtriptyline for insomnia and neuropathy, cymbalta for fibromyalgia, as well as assorted other pain killers, muscle relaxers, sleep aids and fentanyl for flare ups of severe pain (R. 263). Dr. Trammell noted the plaintiff had left L4/L5 radiculopathy, pain in his jaw, pain in his arm, pain in his hand, pain in his shoulder, pain in his lower leg, pain in his back, and pain in his neck (R. 264-265). Upon x-ray, Dr. Trammell noted a slight

---

[5]Generic for Tegretol, of which drowsiness is a common side effect. Although originally used to control seizures, carbamazepine is prescribed for trigeminal neuralgia as well.

straightening of the lordosis, consistent with myofacial spasm, mild diffuse degenerative changes and small buckshot remnants in the soft tissue of the neck and around C5-6, and chronic mild osteoarthritis (R. 265). Due to severe neck pain and neuropathy, Dr. Trammell also ordered an MRI of plaintiff's cervical spine, which did note prior fusion at C5-6 but found no other abnormality (R. 284). Medical records post-dating October 2009 do not reflect any changes to plaintiff's conditions (R. 288-294).

The plaintiff was not sent for a consultative examination by the Commissioner.

### Standard of Review

In a Social Security case, the initial burden of establishing disability is on the claimant, who must prove that due to a mental or physical impairment he is unable to perform his previous work. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir.1987). If the claimant is successful, the burden shifts to the Commissioner to prove that the claimant can perform some other type of work existing in the national economy. *Id.*

This court's review of the factual findings in disability cases is limited to determining whether the record contains substantial evidence to support the ALJ's findings and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir.1990). "Substantial evidence" is generally defined as

"such relevant evidence as a reasonable mind would accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir.1996); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983). This court also must be satisfied that the decision of the Commissioner is grounded in the proper application of the appropriate legal standards. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir.1988); *Bridges v. Bowen,* 815 F.2d 622, 624 (11th Cir.1987); *Davis v. Shalala*, 985 F.2d 528 (11th Cir.1993). No presumption of correctness applies to the Commissioner's conclusions of law, including the determination of the proper standard to be applied in reviewing claims. *Brown v. Sullivan*, 921 F. 2d 1233, 1235 (11th Cir.1991); *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir.1991). Furthermore, the Commissioner's "failure to ... provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius*, 936 F.2d at 1145-1146.

When making a disability determination, the ALJ must consider the combined effects of all impairments. *Davis v. Shalala*, 985 F.2d at 533; *Swindle v. Sullivan*, 914 F.2d 222, 226 (11th Cir.1990); *Walker*, 826 F.2d at 1001. When more than one impairment exists, the plaintiff may be found disabled even though none of the impairments considered alone would be disabling. *Id*. The ALJ must evaluate the combination of impairments with respect to the effect they have on the plaintiff's

ability to perform the duties of work for which he or she is otherwise capable. *Lucas v. Sullivan*, 918 F.2d 1567, 1574 (11th Cir.1990). Merely reciting that the plaintiff's impairments in combination are not disabling is not enough. The ALJ is required to make specific and well articulated findings as to the effect of the combination of impairments. *Walker*, 826 F.2d at 1001.

## Legal Analysis

In this case, the ALJ found that the plaintiff suffered from the severe impairments of status post gunshot wound to the jaw requiring mandibular reconstruction; degenerative disc disease of the cervical spine with fusion; degenerative disc disease of the lumbar spine; migraines; and depression (R. 18). No mention is made of trigeminal neuralgia. He found no impairment or combinations of impairments which, singly or in combination, met or medically equaled the criteria of any of the listing of impairments found in 20 CFR 404, Subpart P, Appendix 1 (R. 20). The ALJ concluded that the plaintiff retained the residual functional capacity to perform work with limitations of lifting/carrying more than 15 pounds occasionally and 5-10 pounds frequently, and further limitations from concentrated exposure to cold, heat, humidity and vibration, and all exposure to hazardous machinery, with only occasional reaching overhead and bilateral pushing/pulling. Further, the

plaintiff was limited to jobs that deal with things instead of people and jobs that do not require production rate pace work (R. 20-21).

The ALJ considered the plaintiff's subjective complaints of pain but found plaintiff's description of the intensity, persistence and limiting effects of the same to be not credible to the extent they do not comport with the ALJ described limitations. The ALJ, while never mentioning that the plaintiff suffered from trigeminal neuralgia, or recognizing references to severe and debilitating pain and fibromyalgia in the medical records, states that the claimant overstated his symptoms from his physical impairments (R. 22). He determined that the plaintiff lacked "full credibility" because at one doctor visit, Dr. Trammell noted "no joint pain, joint stiffness, muscle pain or swelling of the extremities" (R. 22). Not mentioned by the ALJ is Dr. Trammel's notation that the plaintiff was prescribed Lidocaine cream for his trigeminal neuralgia, as well as gabapentin for nerve pain, with the notation: "This should potentiate Vicoprofen" and included instructions to increase the dosage by ½ tablet every 2-3 days until the neuralgia improved (R. 289).

The ALJ merely finds no medical evidence to support "residual issues related to his facial trauma" (R. 22) while ignoring the diagnosis of trigeminal neuralgia. Similarly, the ALJ finds little "objective evidence of record" to support the alleged degree of low back pain, hip and leg pain (R. 22), while ignoring the references to myofacial pain, fibromyalgia and various neuralgias contained in the record. Without

any inquiry into or recognition of these diseases and diagnoses, the ALJ then states that Dr. Trammel fails to provide any support for his opinion concerning the plaintiff's level of pain (R. 23). No mention is made by the ALJ of the fact that Dr. Deatherage also diagnosed the plaintiff with trigeminal neuralgia. Indeed, the ALJ fails to mention the medical records of Dr. Deatherage at all. The ALJ, having thus ignored essentially all of the medical records and medical opinions in the file, determines that "the decision to limit claimant to a restricted range of light work was reached only by giving him great benefit of doubt, and the undersigned will not stretch credulity past the breaking point by extending it further" (R. 23).

Having therefore called both the plaintiff and his treating physician liars, while ignoring the most severe of the plaintiff's ailments contained in the medical records, the ALJ determines that the opinions of Dr. Trammell are entitled to no weight[6] (R. 23). The ALJ does recognize that the medical records contain no other opinions from medical sources (R. 24).

Thus, based upon his review of the medical evidence, the ALJ determined the plaintiff could not return to his past relevant work, but retained the residual functional capacity to perform a limited range of light work (R. 24). The ALJ failed to include

---

[6]The ALJ, having disregarding Dr. Trammell's opinion concerning the severity of plaintiff's pain, and finding no basis for such opinions, offers no alternative explanation as to why Dr. Trammell is prescribing the plaintiff powerful narcotic painkillers to deal with the allegedly exaggerated pain.

any discussion of whether bouts of intermittent severe pain could prevent sustained substantial gainful employment.

The plaintiff argues that the ALJ's determination of the plaintiff's residual functional capacity is not based on substantial evidence and failed to properly apply the Eleventh Circuit's three-part pain standard. Plaintiff's memorandum, at 7, 9.

The severity of a medically ascertained disability must be measured in terms of its effect upon ability to work." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir.1986). "[In order for] an impairment to be non-severe, 'it [must be] a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.'" *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir.1984). Step two is a threshold inquiry. It allows only claims based on the most trivial impairments to be rejected. *Id.* A "severe impairment" is a "de minimis requirement which only screens out those applicants whose medical problems could 'not possibly' prevent them from working." *Stratton v. Bowen*, 827 F.2d 1447, 1452 n. 9 (11th Cir.1987) (*quoting Baeder v. Heckler*, 768 F.2d 547, 551 (3d Cir.1985)) The finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement at step two. *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir.1987).

Given the facts of this case, the court is of the opinion that the plaintiff's trigeminal neuralgia, questionable indications of fibromyalgia and other various polyneuralgias should have been considered "severe impairments" as they clearly "interfere with the individual's ability to work, irrespective of age, education, or work experience." *Brady*, 724 F.2d at 920. The ALJ did not investigate, define, or even mention these diagnoses, despite repeated references to the same in the medical records.

The ALJ having thus belittled the severity of the plaintiff's pain, and without any medical opinion on which to rely, crafted a residual functional capacity based solely on his own opinion and which ignored the most serious of plaintiff's ailments.

Proper application of the pain standard, used when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms, requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir.2002). "The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." *Id.* "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote*

*v. Chater*, 67 F.3d 1553, 1562 (11th Cir.1995). There is no requirement that the ALJ refer to every piece of evidence, but the credibility determination "cannot merely be a broad rejection which is not enough to enable ... this Court to conclude that the ALJ considered [the claimant's] medical condition as a whole." *Dyer v. Barnhart*, 395 F.3d 1206, 1210-11(11th Cir.2005)(quotations and alterations omitted). Therefore, if a plaintiff testifies he suffers from pain at a level that would prevent work and he satisfies the three part pain standard, he must be found disabled unless that testimony is properly discredited.

In the facts before this court, the plaintiff has alleged disabling pain, from his chin, his neck, and migraine headaches. Absent from the ALJ's decision is any development or consideration of whether severe pain can be disabling. "Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits...." *Sims v. Apfel*, 530 U.S. 103, 110–111, 120 S.Ct. 2080, 2085, 147 L.Ed.2d 80 (2000), citing *Richardson v. Perales*, 402 U.S. 389, 400–401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "Because a hearing before an ALJ is not an adversary proceeding, the ALJ has a basic obligation to develop a full and fair record." *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir.1997), *citing Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir.1981).

The evidence establishes that the plaintiff suffers from two separate ailments which both cause intermittent severe restrictions and limitations. Specifically, while the evidence supports the ALJ's determination that the plaintiff could theoretically perform a limited range of light work, there is no evidence which supports or refutes that the plaintiff can do so on a daily ongoing basis.  An "RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on *a regular and continuing* basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. *A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule*." SSR 96-8P, 1996 WL 374184, 2 (emphasis in original in part and emphasis added in part). The sole opinion in the record regarding the same, that of Dr. Trammell, was wholly disregarded by the ALJ.

The ALJ's failure to develop the record sufficient to determine whether, despite these ailments, the plaintiff can maintain substantial gainful employment on a sustained basis, leaves this court with the firm conviction that the record has not been properly developed.  Because of this error, the court must remand this case to the Commissioner.

## Conclusion

Based on the foregoing, the court is of the opinion that the decision of the ALJ was founded upon errors of law, and therefore the decision of the Commissioner must be **REVERSED** and this case is **REMANDED** for further consideration of the evidence and development of the record. Specifically such consideration should include, but is not limited to, whether trigeminal neuralgia should have been included as a "severe impairment" and whether the inclusion of the same would change the ALJ"s view of both Dr. Trammell's opinions and the level of pain experienced by the plaintiff. Because the ALJ found the only medical source opinion in the record to be entitled to no weight, the Commissioner shall also send the plaintiff for a consultative evaluation to obtain an additional opinion as to his physical capacities. If of use in understanding the medical records and further medical opinions, the ALJ shall hold a supplemental hearing, and updated medical records, specifically those from any pain management clinic(s) at which the plaintiff has been seen. Should a new hearing be so held, the same shall include testimony from a VE including hypothetical questions which take a realistic account of expected absences into consideration.

**DONE** and **ORDERED** the 3rd day of December, 2012.

_____
INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE